**COMPAGNIE DE SAINT–GOBAIN,**
Plaintiff,

v.

**COMMISSIONER OF PATENTS,**
Defendant.

**Civ. A. No. 1803–63.**

United States District Court
District of Columbia.

Feb. 16, 1966.

John L. Seymour, Bauer & Seymour, New York City, for plaintiff.

Joseph Schimmel, Acting Solicitor, S. William Cochran, Washington, D. C. (of counsel), for defendant.

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 145 in which plaintiff, assignee of Guy Bach's application Serial No. 687,821, filed October 2, 1957, entitled "Optical Apparatus," seeks an adjudication that it is entitled to receive a patent for the invention specified in Claims 1, 2, 5–10, 12 and 13 of the Bach application, which is entitled under 35 U.S.C. § 119 to the rights of priority of two French patent applications filed October 6, 1956, and August 13, 1957.

Claim 1 is illustrative of the invention and reads as follows:

1. A panfocal lens made of transparent refringent material having an index of refraction $n$, the lens having a first and second main face, both such faces being surfaces of revolution, the first face having a meridian whose curvature varies in a continuous manner, said first face having a constant astigmatism in at least one region of substantial area of its surface.

The references relied upon by defendant in rejecting plaintiff's claimed subject matter as obvious and unpatentable under 35 U.S.C. § 103 are the following:

| | | |
|---|---|---|
| Poullain et al. | 1,143,316 | June 15, 1915 |
| Evans | 2,109,474 | March 1, 1938 |
| Jeffree (France) | 1,112,429 | Nov. 16, 1955 |

(Corresponding to Jeffree–British Patent No. 775,007, May 15, 1957).

———◆———

Evans discloses a panfocal, or multifocal lens which "varies in dioptric power from top to bottom with the near vision at the bottom." At least one of the two surfaces of the Evans lens, namely the inner surface, may be a surface of revolution, as indicated by the statement that "it is obvious that a lens of limited characteristics could be generated about one axis of generation, the dioptric power of which lens would vary gradually from one edge to the opposite edge." Evans teaches that "the vertical curvature of the inner or concave surface of the lens * * * might be an involute or other suitable curve," which is essentially equivalent to plaintiff's claim limitation of "a meridian whose curvature varies in a continuous manner" for the outer or first face of the claimed panfocal lens. This 1938 patent on a panfocal spectacle lens also discloses that "if required, this graduated focal grinding can have a different dioptric power horizontally than vertically at the same point in order to correct astigmatism, etc."

Poullain et al. disclose a multifocal optical lens which "is essentially charac-

terized by this fact that it presents on one of its faces, or on both, surfaces with radii of variable curvature uniformly progressive," which expression is again equivalent to "meridian whose curvature varies in a continuous manner" in plaintiff's claims. Poullain et al. disclose that "the second face" of the lens may be a torus; and the second or inner face of plaintiff's lens is a torus, or toroidal surface. This reference teaches that "in cases where it is at the same time desired to correct astigmatism the second surface may be a cylinder or a torus" and that "the correction of astigmatism can be introduced" simply "by giving these two radii (in horizontal and vertical perpendicular planes) suitably selected unequal values." Poullain et al. indicate in their 1915 patent that "in order to obtain the surfaces indicated above * * * it would be necessary to have recourse to special machines." These "special machines" would be rotary optical grinding machines, which are readily available today, over fifty years after the Poullain et al. patent was granted.

The Jeffree patent, which the Court considers to be the most pertinent of the three cited references, was published in France on March 14, 1956, only seven months prior to the filing date of plaintiff's first French application.

Jeffree discloses that, "when only one non-spherical surface is used" in a multifocal spectacle lens unwanted astigmatic errors cannot generally be removed. However, Jeffree does not indicate the magnitude of acceptable astigmatic errors, and plaintiff, while likewise indicating in the Bach specification that "in practice, the desired constant value of astigmatism can only be approached," asserts that astigmatic errors of up to $\frac{1}{4}$ diopter are acceptable for corrective eyeglasses as substantially "constant" astigmatism. It is reasonable to infer that when more than one "non-spherical surface" is used, and Jeffree indicates that his "other surface" may be "toroidal" like Bach's, then it should be possible to achieve the desired result of substantially constant astigmatism in a panfocal lens. Jeffree teaches that each of his two "aspherical" or non-spherical surfaces may have its own independent astigmatism by stating that "in accordance with the invention, there is provided a multifocal lens having its positive power increasing gradually from top to bottom in the vertical meridianal plane, each surface being aspherical and having, for each point on both of its surfaces, the horizontal curvature greater than the vertical curvature."

Jeffree anticipates one major element of plaintiff's claims, i. e., that *both* surfaces are surfaces of revolution, as shown by the following excerpt:

"The simplest lenses according to this invention are those wherein both surfaces are surfaces of revolution. In general, since corrections for visual astigmatism have to be incorporated, the surfaces are conveniently those that are derived from surfaces of revolution by the addition thereto, as specified below, of suitable amounts of astigmatic correction."

The added astigmatic correction would obviously be as "constant" as possible over substantially the entire area of the lens surface to which it is added, in order to provide a uniform sight correction.

The fact that the independent "constant" astigmatism of each of Jeffree's two "aspherical" surfaces, like Bach's, is cancelled out in the lens as a whole, so that the lens may be used "without further modification" for the purpose of compensating for farsightedness (presbyopia) alone is shown in the following excerpt:

"A lens so designed may be used without further modification when no corrections for visual astigmatism are required to be incorporated; as previously explained, when such corrections are required they are added to one or other surface of such a lens."

Jeffree states that "lenses according to this invention * * * may also be made by grinding and machining processes of known type, in glass, plastics or other (transparent refringent) materials." One final pertinent teaching in the Jeffree patent is as follows:

"In certain cases lenses incorporating astigmatic correction can be made according to this invention with the same surfaces of revolution * * * as are appropriate for lenses with no astigmatic corrections, by slight displacements of one * * * surface relative to the other."

■ Upon review of all the evidence in this case, the Court finds that the differences between the subject matter of Claims 1, 2, 5–10, 12 and 13 of the Bach application in suit and the prior art, particularly the Jeffree French patent, are such that the claimed subject matter as a whole would have been obvious at the time the Bach invention was made, October 6, 1956, to a person having ordinary skill in the art of making optical lenses. Therefore, the Court holds that the claimed subject matter of the application in suit is unpatentable under 35 U.S.C. § 103.

■ In addition to the rejection for obviousness under 35 U.S.C. § 103, the Bach application in suit was also rejected on two other grounds, namely, insufficiency of specification disclosures and indefiniteness of the claims, both rejections being based on 35 U.S.C. § 112. Initially, the Court states the rule that "the words of a patent or a patent application, like the words of specific claims therein, always raise a question of law for the court and may not be determined by the opinion of experts." Watson, Commissioner of Patents v. Bersworth et al., 102 U.S.App.D.C. 187, 251 F.2d 898 (1958). With particular regard to the facts of this case, where there is a clear conflict in the evidence, this rule means that the Court must independently determine the questions of sufficiency of disclosure and definiteness of claims, and the Court is not bound in any respect either by the opinions of plaintiff's experts, who were qualified to testify at the trial as "persons skilled in the art," or by the opinions of defendant's experts, namely, the Patent Office Examiner who handled the Bach application and the Board of Appeals.

■ Determination of the issues of sufficiency and definiteness should not be conducted in a vacuum, however, for such abstract determinations without regard to fact situations are easily foreseen to be the precursors of arbitrary, fanciful rejections based on 35 U.S.C. § 112. One factor which should be taken into consideration in determining sufficiency is the state of the particular art. When the prior art patents are characterized by a general vagueness and incompleteness of disclosures, as are the three prior art patents cited as references against the Bach application in suit, the Patent Office does not place itself in a favorable position to challenge the completeness of a patent specification in the same art. While defendant takes the admittedly correct position that previous errors of the Patent Office in granting patents with vague, even incomprehensible, disclosures do not justify continuation of such errors, nevertheless there is at least

an equally plausible inference (and even a presumption under 35 U.S.C. § 282) to the effect that the prior art patents were correctly granted by the Patent Office, which now attempts to apply unduly harsh standards in rejecting patent applications which are currently being examined, on the ground of insufficiency of specification disclosures.

While the general vagueness of prior art patents in a particular art cannot, of course, relieve an applicant from the statutory obligation of drafting his specification and claims so as to comply with 35 U.S.C. § 112, the Court is of the opinion that it is a factor which may properly be considered, so that maximum latitude should be accorded an applicant in determining whether his specification disclosures for an invention in the same art are sufficient to comply with the statutory requirements.

■ In view of the aforementioned considerations, plus the trial testimony of plaintiff's witnesses, the Court holds that the specification disclosures of the Bach application are sufficient to comply with the requirements of the first paragraph of 35 U.S.C. § 112. Likewise, the Court holds that the claims of the application in suit particularly point out and distinctly claim the subject matter which applicant Bach regards as his invention.

■ With particular regard to the claims, the expression "constant astigmatism" may reasonably be interpreted (on the facts of this case) in light of the specification to mean *substantially* constant astigmatism, since the word "substantially" occurs several times in the specification. The claims of a patent application should always be interpreted in light of the specification, since an applicant may be his own lexicographer.

The objection by defendant that the structure of the first face surface of revolution which has the "constant astigmatism" is not distinctly defined in the claims is not well taken. The surface of revolution is by definition formed by revolving a defined curved line, namely "a meridian whose curvature varies in a continuous manner," about a straight line

axis of revolution. If anything is missing from the claims in this regard, it is only the Cartesian coordinates which locate the axis in relation to the curved meridian. Two means for locating this axis are shown in the Bach specification, and it would be particularly inappropriate to clutter the claims with such coordinates which, if present, would only be regarded by the Court as window dressing without patentable significance.

In summary, the Court holds that the specification and claims of the Bach application in suit comply with the requirements of 35 U.S.C. § 112, but the claimed subject matter is obvious and unpatentable under 35 U.S.C. § 103. Therefore, plaintiff's Complaint should be dismissed.

This Opinion contains Findings of Fact and Conclusions of Law.